NOT FOR PUBLICATION                                          CLOSED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LOUIS LUYTEN, | Civ. No.: 11-6366 (JLL) |
| Petitioner, | **OPINION** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

Linares, J.

This matter comes before the Court by way of Louis Luyten's ("Petitioner" or "Luyten")'s amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C § 2255. Respondent (the "Government") submitted an Opposition to Petitioner's motion. Plaintiff initially filed this matter without the assistance of counsel. The Court appointed counsel on or about September 10, 2012, and held an evidentiary hearing on January 3, 2013, as to the limited issue of whether Petitioner timely requested that his previous attorney file an appeal. For the reasons set forth below, Petitioner's motion is GRANTED as to Ground 1, the issue of a timely request to appeal, but DENIED as to all remaining grounds.

**I. BACKGROUND**

Petitioner was arrested on March 14, 2009, pursuant to a criminal complaint and arrest warrant in connection with violating 21 U.S.C. § 846 for conspiring to distribute five kilograms or more of cocaine contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) as well as quantities of

methamphetamine and oxycodone contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  (Resp. Br. 1).  Michael Calabro, Esq. was appointed to represent Petitioner pursuant to the Criminal Justice Act.  Id.

On February 16, 2010, Petitioner Luyten pled guilty to the lesser count of conspiracy to distribute one kilogram or more of cocaine, contrary to 21 U.S.C. §§ 841(a) (1) and 841 (b) (1) (B), in violation of 21 U.S.C. § 846.  During a plea colloquy, Luyten indicated, in relevant part, that he had an opportunity to speak with his lawyer and that he was satisfied with Calabro's representation of him.  (Feb. 16, 2010 Tr. at 6:10-6:15).  He also stated that he understood what rights he was giving up, the implications of accepting a plea agreement, and he admitted the underlying conduct.  (Feb. 16, 2010 Tr. 21:11-22:15).

However, in advance of the sentencing scheduled for June 1, 2010, Petitioner sent a *pro se* letter to the Court, despite the fact that he was still represented by Calabro at the time, on or about May 18, 2010.  (Resp. Br. 2; Ex. A).   The letter reflected Luyten's belief that he was entrapped and, similarly, that his co-defendant, who had not been working for law enforcement, "lulled" him into a trap.  (Resp. Br. 2-3; Ex. A).  As a result, the Court held a status conference on June 1, 2010, in order to glean more information about the apparent breakdown of the attorney-client relationship.  (Jun. 1, 2010 Tr. 4:22-5:2).

The Court appointed a different attorney to represent Petitioner, Mr. James Kimball.  At a subsequent status conference on July 7, 2010, Kimball stated that despite having fully considered a potential entrapment defense and discussed same with his client, Petitioner decided to proceed with sentencing instead of withdrawing his guilty plea.  (Jul. 7, 2010 Tr. 4:11-5:11).  During a subsequent colloquy, Petitioner indicated on the Record that he "heard everything that my attorney said, and I agree completely with what he said."  (Jul. 7, 2010 Tr. 7:11-12).  Luyten

explained that he was initially shocked by the presentence report and that "still this entrapment thing is in my head." (Jul. 7, 2010 Tr. 7:13-16). Notwithstanding, Petitioner indicated that having consulted with his attorney, he no longer wanted to withdraw his plea and that he was very satisfied with the services of his attorney up to that point. (Jul. 7, 2010 Tr. 7:17-8:2).

On September 2, 2010, Petitioner was sentenced to a term of 96 months imprisonment followed by four years of supervised release after entering a guilty plea for a one count Information which charged him with conspiracy to distribute five hundred or more grams of a controlled substance. (Pet'r. Mot. ¶¶ 4-5; Petr. Br. 2). Notably, Petitioner faced an advisory Guidelines range of 135-168 months. (Gov. Opp'n. 5). However, the Court granted a downward variance and imposed a 96-month sentence. (Id.).

What happened thereafter is less clear. Luyten asserts:

> At the conclusion of the sentencing hearing, Luyten instructed his new defense counsel, James P. Kimball, to meet with him in order to file a proper appeal challenging the drug type and amount attributed to him, the forefeiture [sic] order, and the issues not raised to determine a lower sentence. Kimball did not meet with Luyten and did not discuss the appeal and did not file an appeal as instructed. Luyten sent several letters to Kimball addressing his concerns with issues that were not raised at the sentencing hearing, but nothing was done.

(Petr. Br. 8).

Petitioner filed the instant Section 2255 motion on or about October 28, 2011. (CM/ECF No. 1). After being advised of his rights under United States v. Miller, 197 F.3d 644 (3d Cir. 1999), Petitioner filed an amended § 2255 motion. (CM/ECF Nos. 2, 5). Luyten filed a brief on May 24, 2012, and the Government submitted a brief in opposition on July 23, 2012. (CM/ECF Nos. 9, 13).

Having determined that the all but Ground One raised no issue of material fact and involved only legal issues, the Court scheduled an evidentiary hearing on whether Petitioner

3

timely requested that his prior attorney, Kimball, file an appeal on his behalf and appointed counsel to represent Petitioner in connection with same. (CM/ECF Nos. 14-15).

The Court held said evidentiary hearing on January 3, 2013. Both Petitioner and his previous attorney, Kimball, testified during the hearing. Luyten testified that Kimball met with him briefly after the sentencing in lockup and that he expressed a desire to appeal at that time. (Jan. 3, 2013 Tr. 10:2-24). Luyten also testified that Kimball told Luyten that he would visit him in jail to discuss the matter, and that Luyten believed he would do so. (Jan. 3, 2013 Tr. 10:23-24, 24:18-25). However, Kimball did not visit Luyten thereafter or otherwise discuss the matter in a timely fashion. (Jan. 3, 2013 Tr. 11:2-5, 60:5-10).

Petitioner Luyten sent a number of letters to Kimball following the imposition of his sentence. (Jan. 3, 2013 Tr. 12:4-10). In the first, dated September 2, 2010, Luyten commended Kimball for a job well done and raised the following issues and questions: (1) whether Petitioner could participate in a drug program resulting in a sentence reduction; (2) the status of a program allegedly proposed by President Obama to reduce the prison population; (3) informing Kimball that Petitioner's attorney in Connecticut would handle the probation violation issues in connection with Petitioner's previous conviction; (4) asking "what is half house"; and (5) asking if there is a choice regarding the facility to which Petitioner would be sent. (Jan 3, 2013 Tr. 16-17; Ex. D1). Notably, however, that letter did not address Luyten's alleged desire to appeal.

On November 30, 2010, Petitioner wrote a second letter to Kimball in which he asked whether Kimball filed an appeal. (Jan. 3, 2013 Tr. 18:3-18; Ex. D2). Petitioner sent a copy of the November 20, 2010, letter via certified mail to Kimball on February 1, 2011. (Jan. 3, 2013 Tr. 18:21-19:11, Ex. D3). Finally, on July 15, 2011, Luyten sent another letter via certified mail

4

inquiring about whether Kimball filed an appeal and requesting a copy of his appellate brief. (Jan. 3, 2013 Tr. 18-20; Ex. D4).

The only letter Luyten received in response was dated February 29, 2012, more than six months after Luyten's final letter. (Jan. 3, 2013 Tr. 20-21; Ex. D5). Kimball testified, however, that he would have filed an appeal if Petitioner asked him to do so. (Jan. 3, 2013 Tr. 47:16).

## II. LEGAL STANDARD

### A. Generally

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 to challenge the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

In order to successfully raise an issue regarding the effectiveness of counsel, a petitioner must allege specific facts in support of the claim. "[B]ald assertions and conclusory allegations" are insufficient to support a claim and may be dismissed without a hearing. Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987), cert denied, 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987). In addition, a petitioner must allege the actions he asserts should have been taken and what favorable information would have been produced or favorable result would have been obtained. See Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990). When considering a motion made pursuant to Section 2255, the Court "must accept the truth of the movant's factual

5

allegations unless they are clearly frivolous." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). In addition, the Court "must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." Id.

**B. Ineffective Assistance**

Sustaining a claim for ineffective assistance of counsel requires a showing as to the following: (1) deficient performance under prevailing professional standards, and (2) resulting prejudice. See Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed. 2d 647 (1984). With regard to the first requirement, the error must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. A petitioner must show that counsel's performance was defective under a standard of objective reasonableness. Hill v. Lockart, 474 U.S. 52, 57, 106 S.Ct 336 (1985). As to the second prong, the petitioner must also demonstrate that counsel's performance actually prejudiced his or her defense. Strickland, 446 U.S. at 687. Stated another way, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court evaluates the effect of any errors in light of the totality of the evidence. Id. at 695-96. The requirements of the Strickland test are cumulative such that if a petitioner does not demonstrate one prong, the Court need not determine whether the other prong is satisfied. Id. at 697.

6

**III. DISCUSSION**

Petitioner Luyten claims that he was deprived of his Sixth Amendment right to counsel as a result of the alleged ineffective assistance of his previous attorneys. Specifically, the Petition alleges ineffective assistance with regard to the following: (1) Kimball failed to file an appeal after sentencing; (2) advice during the pretrial stages was ineffective and the plea was not knowing and voluntary as a result; (3) failure to investigate Petitioner's prior criminal history on the part of both counsel; (4) both counsel's failure to advise Petitioner of his options to proceed to trial, to examine the evidence, to investigate his possible defense and properly explain the elements of the charged offense; (5) failure to oppose a forfeiture order by both counsel; (6) failure to challenge the pre-sentence report by both counsel; (7) both counsel failed to object to the amount of drugs and types of drugs; (8) both counsel failed to investigate Petitioner's role in the sting operation and to advise petitioner of an entrapment defense; (9) Calabro was ineffective because he signed continuance orders without Petitioner's consent and his constitutional rights were violated because he was not provided counsel at arraignment; and (10) Calabro was ineffective by advising Petitioner to plead guilty without reviewing the evidence.

**A. Timely Request to Appeal**

With regard to ineffective assistance claims in the appeal context, counsel "has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that his particular defendant reasonably demonstrated to counsel that he was interested in appealing. Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). As to prejudice, "when counsel's constitutionally deficient performance deprives a defendant of an

appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id. at 484. Where a particular defendant reasonably demonstrated that he was interested in appeal, "prejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client." Solis v. United States, 252 F.3d 289

Notably, "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the petitioner seeks an end to judicial proceedings." Flores-Ortega, 528 U.S. at 480. Even where a petitioner has entered a guilty plea, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id.

As noted above, the Court appointed counsel to represent Petitioner in connection with the evidentiary hearing on the issue of Petitioner's request for a timely appeal. (CM/ECF Nos. 14-15). Petitioner argues that Kimball's assistance was constitutionally defective because he failed to file an appeal from Luyten's sentence despite the direction that he do so and failed to timely follow-up with Luyten. (Pet'r. Post-Hearing Br. 3-4). In response, the Government argues that the Court should discredit Petitioner's testimony that he instructed Kimball to file an appeal because of the following: (1) "[P]etitioner's answers both on direct examination demonstrate that his recollection of the September 2, 2010, meeting with Mr. Kimball is either mistaken or fabricated"; and (2) "his strange answers and demeanor should give the Court great pause." (Gov. Post-Hearing Opp'n. 1). In addition, the Government emphasizes that the first letter, dated September 2, 2010, does not mention the issue of appeal despite raising a number of issues including potential new legislation and a drug program. (Gov. Post-Hearing Opp'n. 2). In

addition, Petitioner enthusiastically wrote "[a]gain, I do not know how to thank you for a job well done!" (Petr. Ex. 1). The first letter to mention an appeal is dated November 30, 2010, which the Government submits is well past the deadline for filing an appeal. (Gov. Post-Hearing Opp'n. 2).

 Having reviewed the relevant testimony and evidence, the Court determines that Petitioner did direct Kimball to file an appeal during their meeting following sentencing in the courthouse and that Kimball was ineffective by failing to do so. While it is the case, as the Government argues, that Luyten does not remember every aspect of the plea hearing, the Court finds credible Petitioner's testimony that he asked Kimball to file an appeal because it involved a discrete issue which would have been very important to Luyten and allegedly occurred at the end of the hearing. The Court finds Kimball's testimony credible but equivocal on the issue of the appeal. For example, he did not recall whether he met with Petitioner following the sentencing hearing. (Tr. 53:5-8). Further, it is undisputed that Luyten sent a number of letters to Kimball and that he did not receive a response until months after sending the final letter. It is worth noting, however, that Kimball testified that he was in communication with Luyten's personal lawyer in Connecticut during that time regarding the matters raised in the first letter sent to him by Luyten. (Tr. 49:20-25-50:22).

 In addition, the Court finds the letters sent to Kimball from Luyten informative on the issue of credibility. The letters indicate that Luyten asked his attorney to file an appeal as evidenced by the fact that Petitioner repeatedly references the appeal and asks for a copy of the relevant appellate brief. Finally, while the initial letter to Kimball does not mention the appeal, that letter primarily contains follow-up questions as opposed to directives. Nevertheless, the Court also finds credible Petitioner's testimony that he did not specifically mention the appeal in

9

that letter because he was under the belief that Kimball would visit him in the days following the sentencing. However, there is no dispute that Kimball did not do so. Nor is there a dispute that Kimball did not otherwise communicate with his client during the applicable deadline. Accordingly, Kimball was ineffective in failing to file an appeal in light of the fact that his client timely requested that he do so. Therefore, the Court will grant Petitioner leave to appeal *nunc pro tunc*.

### B. Claims Regarding Initial Counsel

Petitioner Luyten used the services of two different defense attorneys in connection with the underlying criminal matter. Initially, Michael Calabro was appointed to represent Luyten. Petitioner asserts that Calabro was ineffective due to the following: (1) failure to consider and advise Luyten of a potential entrapment defense; (2) inadequate advice during the pretrial stages of the case (Ground 2); (3) failure to advise Petitioner of his options regarding trial (Ground 4); and (4) advising Petitioner to plead guilty without reviewing the evidence (Ground 10).

Petitioner alleges that both Calabro and Kimball were ineffective with regard to all except the latter. Accordingly, the Court will discuss those claims in detail below. In order to sustain a claim for ineffective assistance of counsel, Petitioner must show the following: (1) deficient performance, and (2) resulting prejudice. See Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed. 2d 647 (1984). As discussed above, in order to satisfy the prejudice prong, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Luyten's brief asserts that he was stripped of his ability to make a final decision about whether to plead guilty because he did not have an adequate opportunity to consider the offer and also because "counsel would not listen to [his] reasoning or questions or concerns about the advantages and disadvantages of pleading guilty instead of going to trial." (Pet'r. Br. 5). Specifically, Petitioner alleges that

> Defense Counsel, Michael V. Calabro (Calabro) forced [the] plea agreement upon Luyten and coerced Luyten to sign the plea agreement without explaining the available options or consequence of pleading guilty or going to trial. Luyten requested that counsel leave a copy of the plea agreement with Luyten at the detention center so that Luyten could thoroughly read it and examine it in detail before making a final decision. Calabro was very uncooperative but after much insistence by Luyten, Calabro did leave a copy but just overnight, and returned to get it back and signed the next day without further discussion and while Luyten informed him that he was not yet completely decided.

(Petr. Br. 5). Luyten also asserts that he "relied on counsel's misadvice when he reluctantly signed the plea agreement and entered a guilty plea." (Pet'r. Br. 6). However, after Petitioner sent a pro se letter to the Court expressing concerns with the defense, the Court held a status conference and appointed a different attorney to represent him in connection with the underlying criminal matter. Luyten does not point to any conduct or other deficiency in Calabro's performance, which affected the ultimate result. Rather, after having the opportunity to consult with his second attorney, Petitioner decided to continue with his guilty plea instead of proceeding to trial. Accordingly, as Luyten does not satisfy the prejudice prong, the Court need not consider whether Calabro's performance was deficient.

## C. Claims Related to Subsequent Counsel During the Underlying Criminal Matter

As noted above, as a result of Petitioner's *pro se* letter regarding the representation rendered by Calabro in advance of the originally scheduled sentencing, the Court appointed

11

James Kimball as counsel. Luyten asserts that Kimball's performance was deficient as to the following: (1) failure to advise Petitioner of options regarding trial in light of the evidence which resulted in a plea that was not knowing and voluntary (Grounds 2 and 4); and (2) failure to adequately consider an entrapment defense and consult with Defendant regarding same (Ground 8).

First, Petitioner does not allege sufficient facts to support a finding that his plea was not knowing and voluntary. As mentioned above, at the second plea hearing, Kimball indicated that he and Petitioner had discussed possible options and defenses. During the colloquy, Luyten stated that he "heard everything that my attorney said, and I agree completely with what he said." (Jul. 7, 2010 Tr. 7:17-8:2). The Government argues that "[b]ecause [Petitioner] affirmatively chose to persist in his guilty plea rather than attempt to withdraw from the plea after Mr. Kimball explained the evidence, his potential defenses, and his sentencing exposures, the Court is in a unique opportunity to know that defendant was not prejudiced by ineffective counsel during the entry and persistence in his guilty plea." (Gov. Opp'n. 9).

As discussed above, when considering a motion made pursuant to Section 2255, "bald assertions and conclusory allegations" are insufficient to support a claim. Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987), cert denied, 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987). In this case, Petitioner's present claims contradict his previous statements on the record. This is particularly the case because, as detailed above, Luyten had the opportunity to consider the benefits and drawbacks of entering a guilty plea with the advice of two separately appointed attorneys and indicated to the Court that he had done so and still chose to pursue that alternative. Even accepting as true the limited factual allegations, Petitioner does not provide sufficient factual support to find otherwise.

In addition, Luyten asserts that he asked both defense counsels to investigate the viability of an entrapment defense. (Petr. Br. 9). However, both allegedly informed him that the defense was not available because he was predisposed due to a previous conviction for possession with intent to distribute marijuana. (Petr. Br. 10). Nonetheless, Petitioner maintains that he had no predisposition with regard to possession and intent to distribute cocaine because the previous offense involved marijuana. (Petr. Br. 11). He continues: "Luyten avers that all the claims raised in his § 2255 and this memorandum of law in support of his § 2255 were issues that defense counsels were to consider and raise during pre-trial and trial proceedings in order to fully develope [sic] the defense and to subject the prosecutor's case to any meaningful adversarial testing." (Pet'r. Br. 14). However, by deciding to enter a plea of guilty, Petitioner made a decision to forego the risk of trial despite the viability of any potential defense he would have otherwise asserted. The Petition does not establish that Kimball's performance was constitutionally deficient in this regard. In any event, Defendant expressed concerns about a potential entrapment defense on the record but requested to proceed with his plea and sentencing regardless. In light of the entry of a guilty plea, Petitioner's claim does not satisfy the prejudice prong of <u>Strickland</u>.

**D. Claims Arising Out of Sentencing**

Luyten asserts the following claims which stem from sentencing: (1) failure to investigate prior criminal history (Ground 3); (2) failure to challenge the presentence report (Ground 6); (3) failure to object to the amount and type of drugs (Ground 7); and (4) failure to investigate Petitioner's role in the sting operation in order to seek a minimal role reduction (Ground 8).

13

The Government asserts that "[Petitioner] cannot show prejudice for counsel failing to challenge the criminal history findings (Claim 3) where [Petitioner] was actually convicted in Connecticut as set forth in the [presentence report] and was actually on probation when he committed the instant offense. Defendant has failed to explain, or even allege, how he was prejudiced." (Gov. Opp'n. 9-10). Indeed, Luyten's motion acknowledges that he was convicted in Connecticut for possession with intent to distribute marijuana and he does not assert that the criminal history findings were incorrect. (Petr. Mot. 10-11).

For the sake of completeness, the Court notes that Petitioner's brief only asserts that Calabro failed to "investigate or research the drug amount attributed to Luyten." (Petr. Br. 7). In opposition, the Government argues as follows: "Nor has [Petitioner] demonstrated, or even alleged, that he was prejudiced by the drug findings . . . where [he] conspired with others to transport 10 kilograms and actually transported 10 kilograms of sham cocaine." (Gov. Opp'n. 10). As discussed above, any prejudice resulting from a failure by Calabro to investigate Petitioner's prior criminal history or challenge the presentence report was cured by the appointment of Kimball. However, insofar as Petitioner is asserting those claims against Kimball, he does not argue that the presentence report was inaccurate with regard to the type or amount of drugs, or his prior criminal history. Accordingly, Petitioner does not establish that he suffered prejudice in that regard.

Finally, Petitioner asserts that counsel was ineffective for failing to investigate his role in the sting operation. The United States Sentencing Guidelines provide that a district court may reduce the sentence of an offender who played only a minor or minimal role in the overall criminal scheme. See U.S. Sentencing Guidleines § 3B1.2. Counsel may render ineffective assistance under certain circumstances for failing to seek an appropriate reduction in sentence if

the role of the offender was minor or minimal. See United States v. Headley, 923 F.3d 1079 (3d Cir. 1991).[1] However, "such reductions should be reserved for those defendants who are 'substantially less culpable than the average participant.'" United States v. Berry, 314 App'x. 486, 487-88 (3d Cir. 2008) (quoting Headley, 923 F.3d at 1084).

Respondent argues that Luyten "fails to demonstrate how he was prejudiced by counsel failing to request a minimal role reduction" because Luyten, who "was already convicted for flying marijuana from Canada to the U.S., was indeed the lead actor in transporting the sham cocaine [at issue in the underlying criminal matter]. He was the very pilot who made the delivery." (Gov. Opp'n. 10). In addition, the Government argues that his co-defendant in the underlying matter could not have made the delivery without him. (Gov. Opp'n. 10).

Petitioner falls far short of demonstrating that Kimball's assistance was deficient or otherwise objectively unreasonable in light of the circumstances of the underlying case. Luyten does not suggest that he was substantially less culpable; rather, the facts reflect a high level of knowledge and involvement in the underlying crime by Petitioner. "[C]ounsel is not ineffective for failing to raise meritless claims." United States v. Berry, 314 App'x. at 487 (citing Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998) (counsel was not ineffective for failing to seek a minimal role reduction where evidence suggested that defendant was not substantially less culpable than the average participant in an offense). Accordingly, Kimball's failure to move for a downward adjustment on that basis was not deficient.

---

[1] The appropriateness of such an adjustment depends on the following factors: "the culpability of a defendant courier must depend necessarily on such factors as the nature of the defendant's relationship to other participants, the importance of defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." Headley, 923 F.2d at 1084 (quoting United States v. Garcia, 920 F.2d 153, 155 (2d Cir. 1990)).

15

**E. Remaining Claims**

Petitioner asserts that his Speedy Trial Act and constitutional rights were violated. (Ground 9). As to the former, Luyten explains that the basis for his Speedy Trial Act claim is that "[d]efense counsel agreed to and signed at least six (6) Continuance Orders without consulting or advising Luyten on them." (Petr. Br. 18). Petitioner argues as follows:

> Luyten was held for more than a year in pre-trial detention without bail only to be presentenced with a plea agreement. There were no complexed [sic] pre-trial motions filed, no investigation or preparation by defense attorney and no presumption made upon the government that the case was going to trial and thereby there was no justification for finding a need for one Continuance Order let alone six of them. There were no victims, violence or threat of violence related to Luyten's case.

(Petr. Mot. 19).

However, Respondent argues, "Defendant cannot complain of a violation of the Speedy Trial Act when his own counsel requested the continuances under the ends of justice exclusion to the Speedy Trial Act." (Gov. Opp'n. 11) (citing United States v. Fields, 39 F.3d 439, 442-443 (3d Cir. 1994)). Indeed, "a defendant's consent, or lack thereof, to a continuance requested by defense counsel is not controlling for Speedy Trial Act purposes." United States v. Tulu, 535 F. Supp. 2d 492, 500-501 (D.N.J. 2008) (quoting Fields, 39 F.3d at 442). In any event, Petitioner does not demonstrate that same was constitutionally deficient under the circumstances of this case.

Second, Petitioner asserts that his constitutional rights were violated because he was not represented by counsel at arraignment. However, his Amended Petition reflects that he was represented by counsel. (Am. Pet. 11). The Amended Petition also reflects that Calabro represented Luyten at a preliminary hearing. (Am. Pet. 11). To the extent that Luyten is

attempting to assert an ineffective assistance claim based on the arraignment, Petitioner does not point to any prejudice or explain how Calabro's representation was deficient.

Petitioner's remaining claims involve both counsels' failure to challenge the following: (1) the relevant forfeiture order; (2) an FBI press release; and (3) failure to challenge the Government's sting operation. However, Petitioner fails to satisfy the Strickland prejudice prong with regard to these claims.

As to the forfeiture order, Luyten argues that he was not the owner of the airplanes used to commit the offense. (Ground 5). However, particularly if Luyten did not own the planes, he does not establish that he suffered prejudice as a result of counsels' failure to challenge the forfeiture order. Similarly, Petitioner does not point to any prejudice that resulted from counsels' failure to challenge the FBI press release. As the Government argues, this is particularly so in light of the fact that there is no indication that same played any role in his plea or sentencing. (Gov. Opp'n. 10). Finally, Luyten does not demonstrate prejudice flowing from counsels' failure to challenge the Government's sting operation in light of his decision to plead guilty. The Government submits "[w]hatever the government's tactics, defendant fully understood his options of either pleading guilty or going to trial, and he elected to persist in his guilty plea after consulting with new counsel." (Gov. Opp'n. 10). In this regard, the Court agrees. Particularly in light of the discussion above regarding the voluntariness of Luyten's plea, the Court finds that Petitioner fails to demonstrate prejudice with regard to this claim as well.

**IV. CONCLUSION**

Accordingly, the Court GRANTS Luyten's amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 as to Ground One. As discussed above, the

Court finds that Petitioner timely directed his previous attorney to file an appeal and that failure to do so was ineffective assistance. Therefore, the Court will grant Luyten leave to file an appeal *nunc pro tunc*. The Court DENIES the Petition as to all remaining claims and declines to issue a certificate of appealability as to same.

An appropriate Order accompanies this Opinion.

Dated:            February 15, 2013

 s/ Jose L. Linares
Jose L. Linares
United States District Judge